J-S83033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CALVIN GADSON | : | |
| | : | |
| Appellant | : | No. 1036 EDA 2017 |

Appeal from the PCRA Order February 21, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0001989-2010

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED MARCH 06, 2018**

Appellant, Calvin Gadson, appeals *pro se* from the order entered in the Philadelphia County Court of Common Pleas, which dismissed his first petition filed under the Post Conviction Relief Act ("PCRA").[1]  We affirm the order denying PCRA relief on the grounds asserted but vacate and remand regarding Appellant's designation as a sexually violent predator ("SVP").

The PCRA court opinion accurately set forth the relevant facts and procedural history of this case.  Thus, we have no reason to restate them.[2]

Appellant raises the following issues for our review:

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] We add that our Supreme Court denied Appellant's petition for allowance of appeal on July 7, 2016.  **See Commonwealth v. Gadson**, 141 A.3d 588 (Pa.Super. 2016), *appeal denied*, 636 Pa. 646, 141 A.3d 478 (2016).

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DISMISSING APPELLANT'S PCRA PETITION WHERE APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO COMPEL THE COURT AND COURT REPORTER TO COMPLY WITH THE RULES OF APPELLATE PROCEDURE IN PROVIDING THE TRANSCRIPTS OF THE CASE, AND BY FAILING TO MOVE FOR SUPPRESSION OF ALL TRANSCRIPTS IN THIS CASE WHERE THESE TRANSCRIPTS WERE DEFECTIVELY PRODUCED AND FRAUDULENTLY CERTIFIED RESULTING IN TRANSCRIPTS TO WHICH NO VERITY CAN BE CLAIMED WHICH PRECLUDED ANY TYPE OF MEANINGFUL REVIEW OR BASIS FOR APPEAL VIOLATING APPELLANT'S RIGHTS TO EQUAL PROTECTION, AND DUE PROCESS [PURSUANT] TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSITUTION?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DISMISSING APPELLANT'S PCRA PETITION WHERE [APPELLATE] COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO CHALLENGE THE SUFFICIENCY OF THE EVIDENCE...TO SUSTAIN THE CONVICTIONS?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DISMISSING APPELLANT'S PCRA PETITION, WHERE TRIAL COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL BY STIPULATING TO FACTS PRIOR TO TRIAL WITHOUT APPELLANT'S CONSENT, AND IN DOING SO, DEPRIVED HIM OF HIS RIGHT TO CONFRONTATION PURSUANT TO THE SIXTH AMENDMENT AND ILLEGALLY AND UNCONSITUTIONALLY WAIVED APPELLANT'S GUARANTEED FUNDAMENTAL RIGHT TO CONFRONTATION?

WHETHER THE [PCRA] COURT ERRED AND ABUSED ITS DISCRETION IN DISMISSING APPELLANT'S PCRA PETITION WHERE COUNSEL [RENDERED] INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO RAISE AND LITIGATE ANY ISSUE RELATED TO THE DENIAL OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW PURSUANT TO THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION BY THE POLICE AND/OR [THE] COMMONWEALTH'S FAILURE TO PRESERVE EXCULPATORY

EVIDENCE FAVORABLE TO THE DEFENSE?

(Appellant's Brief at 4-5).

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. *Commonwealth v. Ford*, 947 A.2d 1251 (Pa.Super. 2008), *appeal denied*, 598 Pa. 779, 959 A.2d 319 (2008). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. *Commonwealth v. Boyd*, 923 A.2d 513 (Pa.Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to PCRA relief, and no purpose would be served by any further proceedings. *Commonwealth v. Hardcastle*, 549 Pa. 450, 701 A.2d 541 (1997).

The law presumes counsel has rendered effective assistance. *Commonwealth v. Gonzalez*, 858 A.2d 1219, 1222 (Pa.Super. 2004), *appeal denied*, 582 Pa. 695, 871 A.2d 189 (2005). To prevail on a claim of ineffective assistance of counsel, a petitioner must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could

have taken place. ***Commonwealth v. Turetsky***, 925 A.2d 876 (Pa.Super. 2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007). The petitioner must demonstrate: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable strategic basis for his action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Id.*** at 880. "The petitioner bears the burden of proving all three prongs of the test." ***Id.***

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Giovanni O. Campbell, we conclude Appellant's issues merit no relief. The PCRA court opinion comprehensively discusses and properly disposes of the questions presented. (***See*** PCRA Court Opinion, filed May 9, 2017, at 4-10) (finding: **(1)** appellate counsel ordered notes of testimony and each volume was lodged with court electronically using court reporting system; court reporter certified accuracy and completeness of each volume of testimony; Appellant points to no inaccuracy in transcripts and fails to identify any prejudice he suffered from alleged technical defects in filing of transcripts; counsel is not ineffective for failing to raise meritless claim; **(2)** Appellant alleges that due to defective transcripts, Superior Court erred by deciding on direct appeal that Commonwealth presented sufficient evidence to sustain Appellant's convictions; because underlying premise regarding defect of transcripts lacks merit, related sufficiency claim fails; **(3)** defense theory at trial was that

Victim consented to sex acts;[3] court charged jury on consent defense; at no time during trial did Appellant ever contest fact that his DNA matched semen sample recovered from Victim; under these circumstances, it was reasonable and appropriate for defense counsel to stipulate to evidence regarding DNA collection and sample;[4] trial counsel did not need Appellant's express approval to enter stipulations; moreover, collective testimony from Victim, various officers, and forensic scientist was duplicative of information contained in stipulations; Appellant cannot demonstrate prejudice based on counsel's stipulations; **(4)** Appellant complains counsel was ineffective for failing to challenge absence of Victim's rape examination medical records; incident occurred on January 31, 1998; DNA match to Appellant did not occur until 2010; fact that medical records no longer existed was not

---

[3] Relevant to this issue, the parties entered into three stipulations of fact regarding: (1) the rape kit procedure performed on Victim; (2) the analysis of the swabs collected from Victim's rape kit; and (3) DNA testing of the swabs from Victim's rape kit, the results of which were entered into a national database and matched Appellant's DNA.

[4] We depart only from the PCRA court's suggestion that Appellant waived this issue for failing to object to the stipulations when they were entered on the record at trial. Appellant could not have objected to trial counsel's performance during trial. *See generally Commonwealth v. Mason*, 634 Pa. 359, 473-74, 130 A.3d 601, 671 (2015) (stating: "What our jurisprudence has consistently prohibited at both trial and appellate levels when strategic disagreements arise between defendant and counsel is the option of hybrid representation, where an otherwise represented defendant acts as *de facto* co-counsel exercising control over parts of the defense"; purpose behind rule prohibiting hybrid representation is to promote judicial efficiency in representation and to avoid conflicting strategies in defense).

discovered until May of 2012; there is no evidence Commonwealth ever possessed Victim's medical records or willfully caused records to be unavailable; there is no evidence or allegation that Victim's medical evaluation contained materially exculpatory evidence; mere fact that those records no longer exist does not warrant relief under these circumstances). Thus, we affirm as to Appellant's issues on the basis of the PCRA court's opinion.

Nevertheless, we are mindful of recent case law calling into question the validity of Appellant's SVP status. Consequently, we elect to review the legality of Appellant's sentence *sua sponte*. **See Commonwealth v. Randal**, 837 A.2d 1211 (Pa.Super. 2003) (*en banc*) (explaining challenges to illegal sentence cannot be waived and may be raised by this Court *sua sponte*, assuming jurisdiction is proper; illegal sentence must be vacated); **Commonwealth v. Butler**, 173 A.3d 1212 (Pa.Super. 2017) (addressing legality of appellant's SVP status *sua sponte*).

Recently, the Pennsylvania Supreme Court held that the registration requirements under the Sexual Offender Registration and Notification Act ("SORNA") constitute criminal punishment. **Commonwealth v. Muniz**, ___ Pa. ___, 164 A.3d 1189 (2017). In light of **Muniz**, this Court held: "[U]nder **Apprendi** and **Alleyne**, a factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him…likely to engage in predatory sexually violent offenses, that increases the length of

registration must be found beyond a reasonable doubt by the chosen fact-finder."[5]  **Butler, supra** at 1217 (internal quotations and citations omitted). This Court further held: "Section 9799.24(e)(3) of SORNA[6] violates the federal and state constitutions because it increases the criminal penalty to which a defendant is exposed without the chosen fact-finder making the necessary factual findings beyond a reasonable doubt."  **Id.** at 1218.  The **Butler** Court concluded that trial courts can no longer designate convicted defendants as SVPs or hold SVP hearings, "until [the] General Assembly enacts a constitutional designation mechanism."  **Id.** (vacating appellant's SVP status and remanding to trial court for sole purpose of issuing appropriate notice under 42 Pa.C.S.A. § 9799.23, governing reporting requirements for sex offenders, as to appellant's registration obligation).

Here, following an assessment by the Sexual Offender Assessment Board, the court imposed SVP status on Appellant on August 15, 2014. Appellant's SVP status carried a lifetime registration requirement.  **See** 42 Pa.C.S.A. § 9799.15(a)(6).  This Court affirmed Appellant's judgment of sentence on February 8, 2016, and our Supreme Court denied allowance of

---

[5] **Apprendi v. New Jersey**, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and **Alleyne v. United States**, 570 U.S. 99, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

[6] **See** 42 Pa.C.S.A. § 9799.24(e)(3) (stating: "At the hearing prior to sentencing, the court shall determine whether the Commonwealth has proved by clear and convincing evidence that the individual is a sexually violent predator").

appeal on July 7, 2016. Before Appellant's judgment of sentence became final, the United States Supreme Court had decided **Alleyne** on June 17, 2013. Relying on **Alleyne**, this Court decided **Butler** on October 31, 2017, which deemed unconstitutional the current mechanism for imposition of SVP status used in the present case and stated trial courts cannot impose SVP status in that manner. **See Butler, supra**. In light of **Muniz** and **Butler**, Appellant's SVP status constitutes an illegal sentence. Because Appellant's judgment of sentence was still pending at the time of **Alleyne**, Appellant is entitled to correction of his illegal sentence. **See Commonwealth v. DiMatteo**, 2018 WL 459340 (Pa. Jan. 18, 2018) (holding appellant was entitled to sentencing relief under **Alleyne** on collateral review of his first timely PCRA petition where appellant's judgment of sentence was not yet final when Supreme Court decided **Alleyne**). Accordingly, we affirm the order denying PCRA relief as to Appellant's claims presented, based on the PCRA court opinion; but we vacate Appellant's SVP status and remand to the trial court to issue a revised notice to Appellant pursuant to 42 Pa.C.S.A. § 9799.23. **See Butler, supra**.

Order affirmed; SVP status vacated; case remanded with instructions. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/18

Circulated 02/05/2018 10:45 AM

**FILED**

MAY 0 9 2017

Office of Judicial Recor
Appeals/Post Tria

IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PA           :          CP-51-CR-0001989-2010

v.                          :

CALVIN GADSON                :

*1886 EDA 2017*

CP-51-CR-0001989-2010 Comm. v. Gadson, Calvin
Opinion

7944176031

### MEMORANDUM OPINION

*CAMPBELL, J.*                                                    May 9, 2017

### Procedural History

Appellant, Calvin Gadson, was arrested on January 4, 2010, and charged with Rape and

related offenses occurring on or about January 31, 1998.

On February 5, 2014, the case proceeded to trial before this Court, sitting with a jury.  On

February 11, 2014, the jury returned its verdicts.  Appellant was convicted of Rape, Conspiracy

to commit Rape, Sexual Assault, Unlawful Restraint, and Robbery.  He was acquitted of a

violation of the Uniform Firearms Act (18 Pa.C.S. § 6106).

On August 15, 2014, following a hearing, Appellant was classified a Sexually Violent

Predator.  He was then sentenced to 10-20 years' incarceration on the Rape, 10-20 years on the

Conspiracy to commit Rape, 2 ½ - 5 years on the Sexual Assault, 1 ½ - 3 years on the Unlawful

Restraint and 10-20 years on the Robbery.  The sentences on the Rape, Conspiracy and Robbery

were each consecutive to one another.  The sentences on the Sexual Assault and the unlawful

restraint were concurrent with each other, but consecutive to the other sentences, for an

aggregate sentence of 32 ½ - 65 years' incarceration.

Appellate counsel was appointed on August 26, 2014.

A timely Notice of Appeal was filed on September 12, 2014.

On February 8, 2016, the Superior Court affirmed the judgment of sentence.

On November 7, 2016, Appellant filed a petitioner under the Post-Conviction Relief Act. 42 Pa.C.S. § 9541, *et seq*.

Counsel was appointed for Appellant.

On January 6, 2017, counsel filed a letter of no-merit, pursuant to *Commonwealth v. Finley*. After conducting and independent review, the Court issued a Notice of Intent to Dismiss the Petition on January 23, 2017, a copy of which was served on Appellant.

On February 21, 2017, the Court dismissed the Petition and granted counsel leave to withdraw. That same date the Order of dismissal and leave to withdraw was served on Appellant, along with a Notice of Dismissal of PCRA and Petition and Right to Appeal, pursuant to Pa.R.Crim.P. 907(4).

Appellant filed a Notice of Appeal on March 13, 2017.

## Factual History

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:

On January 31, 1998, then 15 year old Complainant was walking home accompanied by her then boyfriend, now husband. N.T. 2/5/14, pp. 47-48. As they passed a park near Dobbins High School two men with guns ordered them into the park through bent bars in the fence. NT. 2/5/14, pp. 48, 60-61, 101-102, 104, 106. One of the men had a .22 and the other had a shotgun which they pointed at Complainant and her boyfriend. N.T. 2/6/14, pp. 136, 167-169, 171, 191-192.

One of the men hit the boyfriend in the back of the head with the 22. N.T. 2/6/14, p. 137. The men ordered Complainant and her boyfriend to empty their pockets of a beeper and

2

some change. N.T. 2/5/14, pp. 49, 62-63. The boyfriend protested, but was told to shut up or they would kill Complainant. N.T. 2/5/14, p. 62; N.T. 2/6/14, p. 136.

One of the men took Complainant over by a tree and ordered her to remove her clothes. N.T. 2/5/14, pp. 50-51, 123. After she removed her clothes, the man ordered her to perform oral sex on him. N.T. 2/5/14, pp. 51, 125. He then told her to turn around and he touched her vagina before penetrating her vagina with his penis. N.T. 2/5/14, pp. 51-54, 124. During this time the man told Complainant that she had better do what he said or he would kill her. N.T. 2/5/14, p. 53.

After the first man finished having intercourse with her, the second man approached Complainant and attempted to have sex with her. N.T. 2/5/14, p. 55. When he was unable to penetrate her anally, he ordered her to perform oral sex on him, which she did. N.T. 2/5/14, p. 55-56. This second man then had vaginal intercourse with her. N.T. 2/5/14, p. 56. When he was done, the second man told Complainant to lie down and not look at him, or he would kill her. N.T. 2/5/14, p. 56. After a couple of minutes she heard her boyfriend's voice telling her to hurry and get dressed, after which they left and went to her home. N.T. 2/5/14, p. 56.

After reaching her home, Complainant sent her boyfriend home and then told her grandmother what had happened. N.T. 2/5/14, p. 64-65; N.T. 2/6/14, p. 139, 151. Complainant then called the police, who took her to the police station, and then to the hospital where she was examined and a rape kit was prepared. N.T. 2/5/14, pp. 64-66, 133, 85-86. Although she was shown photographs in 1998 and again in 2009, she could not identify the perpetrators. N.T. 2/5/14, pp. 69-70.

The samples collected in the rape kit were preserved and ultimately examined for DNA.

3

A DNA profile was obtained and documented July 29, 2002. N.T. 2/6/14, pp. 87-89. Police Detective Linda Pace obtained a "John Doe" arrest warrant for a person with the DNA profile in the sample obtained from Complainant. N.T. 2/6/14, pp. 94-96, 111; Exhibit s C-13, C-14. On July 31, 2009, the DNA obtained from the cervix of Complainant was matched to Appellant Calvin Gadson. N.T. 2/6/14, pp. 89, 98. A search warrant authorizing the taking of a DNA sample from Calvin Gadson was obtained on October 6, 2009. N.T. 2/6/14, p.103-108; Exhibits C-15, C-16. The DNA from Complainant matched the DNA sample taken from Appellant Calvin Gadson. N.T. 2/7/14, pp. 16-18, 34. Complainant never had consensual sex with Appellant Calvin Gadson. N.T. 2/5/14, p. 70.

## Discussion

Appellant raises three issues in his petition: 1) Ineffectiveness of appellate counsel in failing to seek to have the trial transcripts suppressed on appeal;[1] 2) Ineffectiveness of trial counsel in stipulating to the chain of custody of the DNA evidence retrieved from the complainant's person and the results of the DNA tests; and 3) Ineffectiveness of trial counsel in failing to litigate a denial of due process arising from the unavailability of the Complainant's medical records from the examination after the incident. None of these claims have merit.

As a threshold matter, we note that this matter was dismissed and counsel was relieved following the filing of a "no-merit" or "*Finley*" letter. The requirements of the *Finley* letter, and thereafter dismissal of the PCRA petition and permitting counsel to withdraw are:

---

[1] Appellant alleges a related error of sufficiency of the evidence, the gravamen of which is that since the transcripts were defective, there was no evidence that the Superior Court could find sufficient to sustain the conviction. Because we find the underlying premise – defect of transcripts – to be without merit, there is no basis for relief on the subsumed claim of sufficiency. Moreover, the sufficiency of the evidence claim was previously litigated and rejected by the Superior Court in the direct appeal. Such a previously litigated claim is not cognizable under the PCRA. 42 Pa.C.S. § 9544(b).

4

1) As part of an application to withdraw as counsel, PCRA counsel must attach to the application a "no-merit" letter,

2) PCRA counsel must, in the "no-merit" letter, list each claim the petitioner wishes to have reviewed, and detail the nature and extent of counsel's review of the merits of each of those claims,

3) PCRA counsel must set forth in the "no-merit" letter an explanation of why the petitioner's issues are meritless,

4) PCRA counsel must contemporaneously forward to the petitioner a copy of the application to withdraw, which must include (i) a copy of both the "no-merit" letter, and (ii) a statement advising the PCRA petitioner that, in the event the trial court grants the application of counsel to withdraw, the petitioner has the right to proceed pro se, or with the assistance of privately retained counsel;

5) the court must conduct its own independent review of the record in the light of the PCRA petition and the issues set forth therein, as well as of the contents of the petition of PCRA counsel to withdraw; and

6) the court must agree with counsel that the petition is meritless.

*Commonwealth v. Friend*, 896 A.2d 607, 615 (Pa. Super. 2006).

Each of the first four requirements was met. As to the remaining two requirements, the Court conducted its own independent review and, as set forth below, agreed that the petition is meritless.

1. **The trial transcripts were properly filed and Appellant is unable to aver any prejudice he suffered from alleged procedural defects in the filing of the transcripts.**

The transcripts, also referred to as the notes of testimony, were ordered by appellate counsel. Each volume was then lodged with the court electronically, using the Court Reporting System. The accuracy and completeness of each volume is certified by the Court Reporter. Defendant avers no inaccuracy, significant or otherwise, in the transcripts and fails to identify any prejudice he claims to have suffered from the claimed technical defects in the filing of the

5

transcripts.

"It is well established that ... counsel cannot be deemed ineffective for failing to raise a meritless claim." *Commonwealth v. Lawrence*, 960 A.2d 473, 478 (Pa. Super. 2008), citing *Commonwealth v. Daniels*, 947 A.2d 795, 798 (Pa. Super. 2008). In the absence of any prejudice, we cannot find either error or ineffectiveness of counsel.

### 2. Counsel was not ineffective in stipulating to the chain of custody of DNA samples or the results of DNA testing.

The theory of the defense was consent. At no time in the course of the trial did the defense ever take issue with the fact that Appellant's DNA matched the semen sample recovered from the complainant's person. Rather, the defense was that there was a consensual sexual encounter between Appellant and the complainant, which the complainant then attempted to conceal from her boyfriend at the time and from her grandmother by fabricating an allegation of rape.[2] Indeed, the jury was charged on the defense of consent. N.T. 2/7/14, pp. 95-97; N.T. 2/10/14, pp. 10-11. Under these circumstances it was reasonable and appropriate for defense counsel to stipulate to evidence regarding the DNA collection and custody.

Further, at no time did Appellant take issue with the stipulation. When the prosecutor first rose to offer the stipulation before the jury heard the details of the stipulated testimony, the Court explained the significance to the jury, with Appellant present. N.T. 2/6/14, pp. 83-84. Appellant did not raise an objection at that point. The stipulations were then presented to the jury. N.T. 2/6/14, pp. 85-90. Appellant did not interpose any objection at that point, nor did he take issue when his counsel acknowledged the stipulation. N.T. 2/6/14, p. 91. He also did not

---

2 N.T. 2/5/14, p. 39; 79-84; 89-90; 121; 137

6

object when the stipulation was re-read to the jury in response to a question during deliberations. N.T. 2/10/14, p. 24-28.

In *Commonwealth v. Brown*, 18 A.3d 1147, 1161 (Pa. Super. 2011), the Superior Court also faced the questions of whether trial counsel was ineffective because he did not adequately explain to Appellant that the effect of proceeding by stipulation was to relinquish his constitutional right to confront and cross-examine witnesses. Therein, the Superior Court quoted the United States Supreme Court's observation that: "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial. The adversary process could not function effectively if every tactical decision required client approval." *Id.* at 1162, quoting *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988). "Thus," the Superior Court concluded, "the United States Supreme Court has held that the decision as to whether to cross-examine a witness and what agreements to enter about admission of evidence are rights that a lawyer may relinquish on behalf of a defendant without the defendant's express consent." *Brown, supra.*, at 1163.

Accordingly, even if the record did not demonstrate that the stipulation was consistent with the defense and further that despite several opportunities, Appellant never took issue with the stipulation at time of trial, the decision to enter into these stipulations was well within the province of counsel and does not form the basis of an ineffectiveness claim.

Finally, we note that the collective testimony of the complainant (N.T. 2/5/14, p. 133, 137), Officer Mychack (N.T. 2/6/14, p. 38), Officer Sanchez (N.T. 2/6/14, p. 46, 51-54), Detective Pace (N.T. 2/6/14, pp. 94-118), and Forensic Scientist Knox (N.T. 2/7/14, pp 8-20),

7

duplicated the information stated in the stipulations of which Appellant contains. Because the other overwhelming evidence demonstrated Appellant's guilt, including the evidence and testimony covering the stipulated matters, Appellant suffered no prejudice from the stipulations. *Commonwealth v. Birdsong*, 24 A.3d 319, 335 (Pa. 2011).

### 3. Counsel was not ineffective in regard to the complainant's medical records.

Appellant complains that his counsel was ineffective for failing to challenge the absence of the complainant's medical records, which absence he claims denied him due process.

Here, as Appellant acknowledged in his Petition (p. 17), the Complainant's medical records from her examination at Episcopal Hospital after the rape, no longer existed. The incident occurred on January 31, 1998. The DNA match to Appellant did not occur until 2010 and the fact that the medical records no longer existed was not discovered until May of 2012. PCRA Petition, Exhibit A, p. 14. That the medical records of a rape examination were no longer available more than 14 years after the event is hardly surprising.

Moreover, there is no evidence that the Commonwealth ever possessed the records or that they willfully caused the records to be unavailable. "[T]o establish a *Brady* violation, a defendant is required to demonstrate that exculpatory or impeaching evidence, favorable to the defense, was suppressed by the prosecution, to the prejudice of the defendant." *Commonwealth v. Gibson*, 951 A.2d 1110, 1126 (Pa. 2008). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)(internal quotation marks omitted).

8

"[S]upport for an allegation that destroyed evidence was exculpatory . . . cannot be based on a 'mere assertion.'" *Commonwealth v. Snyder*, 963 A.2d 396, 405 (Pa. 2009) (citations omitted); see also *Commonwealth v. Free*, 902 A.2d 565, 571 (Pa. Super. 2006) ("The allegation that the evidence at issue was exculpatory cannot be based on a mere assertion.") (citation omitted). The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed evidence. See *Commonwealth v. Porter*, 728 A.2d 890, 898 (Pa. 1999). "[T]he United States Supreme Court has held that '[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.'" *Commonwealth v. Spotti*, 94 A.3d 367, 383 (Pa. Super. 2014), citing *Commonwealth v. Ly*, 980 A.2d 61, 75-76 (Pa. 2009) (internal citations omitted).

As to *Brady* claims advanced under the PCRA, a defendant must demonstrate that the alleged Brady violation "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." See *Commonwealth v. Copenhefer*, 719 A.2d 242, 259 (Pa. 1998).

Here, there is no evidence or averment that the records of the rape medical examination of complainant contained materially exculpatory evidence of any kind. The mere fact that they no longer exist does not warrant relief where there is no basis for believing there was any exculpatory information in the records and where there is no basis to believe that either the police or the prosecution played any role in the unavailability of the complainant's 14 year old medical records.

Accordingly, Appellant has raised no issues of merit and the PCRA petition was properly

9

dismissed.

By The Court:

Campbell, J.

10

Commonwealth v. Calvin Gadson          Case Number: CP-51-CR-1989-2010

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing upon the person(s), and in the manner indicated above, which service satisfies the requirements of Pa.R.Crim.P.114:

District Attorney:

        Robin Godfrey, Esquire
        Chief of PCRA Unit
        Office of the District Attorney
        Three South Penn Square
        Philadelphia, PA 19107

Type of Service    ( ) Personal (X) First Class Mail

Defendant:

        Calvin Gadson
        LR-3104
        SCI Rockview
        Box A
        Bellefonte, PA 16823

Type of Service:    (X) Other, please specify: *Certified Mail (70132630000158979427)*

**Dated: May 9, 2017**

*Vanessa A. Montone*
Vanessa A. Montone
Judicial Secretary to
Honorable Giovanni O. Campbell